written agreement as that alleged in the bill of complaint, it would not impair the validity or operative character of the agreement; but it is not necessary to rest the decision upon that ground, as the evidence shows to the entire satisfaction of the court that the allegations of the bill of complaint in that regard are true, which is all that need be said in answer to the first defence.

Attempt is made by the second defence to give an interpretation to the written agreement, which the court cannot sustain. Instead of that, the court is of the opinion that, by the true construction of the agreement, the patentee of the first patent agreed that caster bottles made in accordance with the patent, whether manufactured by himself or his licensees, should be provided with wooden pulverizers, and that the salt bottles or casters constructed by the patentee of the second patent, or his licensees, should be provided with pulverizers such as the patentee of the second patent was constructing at the date of the written agreement. No reasons are assigned to support the proposition that the patentee of the first patent possessed no power to make such a contract, and it is believed that none can be which will be satisfactory. Inventions secured by letters-patent are property in the holder of the patent, and as such are as much entitled to protection as any other property consisting of a franchise, during the term for which the franchise or the exclusive right is granted. Such a holder may sell, assign, lease, or give away the property, or enter into any arrangement or agreement respecting the same, not enlarging the right granted, as the same might make with any other personal property. Authorities to support that proposition are not necessary, as the statement of it is quite sufficient to secure in its behalf universal assent. Parties are supposed to mean what they say. If so, it is clear that the patentee of the first patent contracted to use wooden pulverizers only, and consented that the owner of the second patent might work under the second patent, using only metallic pulverizers, which is a sufficient response to all the propositions that the contract gave the patentee of the second patent no right to practise the invention secured by the first patent. Grant that, and it follows that the patentee of the first patent has not kept his covenants, as the proofs are full to the point that he has made, and is making, salt boxes or casters with metallic puverizers, in direct violation of the agreement.

Two of the respondents claim that they are not liable, because, as they allege, they acquired the right to practise the invention secured by the first patent without any knowledge of the written agreement; but the proof is the other way, and shows not only that they knew what the terms of the agreement were, but that they had a copy of it in their possession when they acquired

their right from the patentee of the first patent; nor is there any merit in the objection that some of the complainants have no interest to maintain the suit, as two of those mentioned have been stricken out by consent, and the record shows that the other acquired an interest in the second before the written agreement was executed.

Nothing remains to be considered but the charge of infringement. Sufficient has already been remarked to show that the first-named respondent has not kept and performed his covenants, and that the other two respondents, as his assignees, have manufactured and sold salt bottles in accordance with the patent mentioned in their answer, which the record shows has a pulverizer-rod with several series of radial points arranged in such a manner that the unscrewing of the cup from the neck of the bottle will produce a spiral motion of the points through the contents of the bottle. Crossman admits that his licensees have made salt boxes or casters with metallic pulverizers and sold the same, and that he has received payment for all they have sold. Taken as a whole, the evidence shows that the two respondents have made and sold salt boxes or casters provided with metallic pulverizers, in violation of the said written agreement, and with full knowledge of the existence of that agreement.

Decree for the complainants for an account, and for an injunction.

---

## Case No. 13,322.
### STATE v. BREWER.
[Nowhere reported; opinion not now accessible.]

---

## Case No. 13,323.
### STATE v. GRAHAM.
[See 41 N. J. Law, 15.]

---

## Case No. 13,323a.
### STATE v. MILLER et al.
[7 Cin. Law Bul. 219.]

Circuit Court, D. Indiana. April Term, 1882.

LAND GRANTS—BED OF LAKE—ACT OF CONGRESS—SWAMP LAND—ESTOPPEL.

[This was an action by the state of Indiana against Jane A. Miller and others.]

Before GRESHAM, District Judge. The United States ceded to the state, in 1850, all the lands known as swamp lands bordering on the lake. The state swamp land commissioner of Jasper county projected a ditch to the Kankakee river, the lake being forty feet higher than the river. Messrs. Dunn & Conduitt purchased the whole rim of land bordering on the lake. They subsequently conveyed the same to M. B. Bright, and aided